UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDITH RAMIREZ,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>D.K. JOHNSON,<br><br>　　　　　Respondent. | Case No. CV 15-1337 JC<br><br>MEMORANDUM OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING ACTION WITH PREJUDICE |

**I.　SUMMARY**

On February 25, 2015, Judith Ramirez ("petitioner"), a state prisoner who is proceeding *pro se*, filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") pursuant to 28 U.S.C. § 2254, with an attached memorandum ("Petition Memo"). Petitioner challenges a judgment in Ventura County Superior Court. On April 1, 2015, respondent filed an Answer and a supporting memorandum ("Answer").[1] Petitioner did not file a Reply. The parties have consented to proceed before the undersigned United States Magistrate Judge.

///

---

[1] Respondent concurrently lodged multiple documents ("Lodged Doc."), including the Clerk's Transcript ("CT") and the Reporter's Transcript ("RT").

1   For the reasons stated below, the Petition is denied, and this action is
2   dismissed with prejudice.
3   **II.   PROCEDURAL HISTORY**
4   On August 22, 2012, a Ventura County Superior Court jury found petitioner
5   guilty of the second degree murder of her daughter on May 29, 2010 (count 1),
6   two counts of child endangerment (counts 2 & 3), driving with a suspended
7   license on May 29, 2010 (count 4), driving under the influence of alcohol on
8   January 27, 2007 (count 5), driving while having a 0.08 percent or higher blood
9   alcohol level on January 27, 2007 (count 6), and driving with a suspended/revoked
10  license on January 27, 2007 (count 7). (CT 419-32). As to count 1, the jury found
11  true allegations that petitioner personally inflicted great bodily injury on her four-
12  year-old son and Abilene Diaz. (CT 419). As to counts 2 and 3, the jury also
13  found true allegations that petitioner personally inflicted great bodily injury on her
14  son and daughter. (CT 421-24).
15  On October 30, 2012, the trial court sentenced petitioner to 23 years to life
16  in state prison. (Lodged Doc. 6 at 2; CT 481-88).[2]
17  On June 24, 2014, the California Court of Appeal affirmed the judgment in
18  a reasoned decision. (Lodged Doc. 1). On August 27, 2014, the California
19  Supreme Court denied review without comment. (Lodged Doc. 8).
20  **III.  FACTS**
21  Since petitioner raises a sufficiency of the evidence claim, the Court has
22  independently reviewed the state court record (see Jones v. Wood, 114 F.3d 1002,
23  1008 (9th Cir. 1997)), and based thereon adopts the following factual summary

---

[2]Although the Court of Appeal did not so state (Lodged Doc. 6 at 2), it appears to this Court that petitioner was sentenced to four years on count 3 plus a consecutive sentence of 23 years to life on count 1, the latter of which consisted of a sentence of 15 years to life plus eight years on the great bodily injury enhancements. (CT 481-88). In any event, the length of petitioner's sentence is not material to resolution of the claim asserted in the Petition.

from the California Court of Appeal's opinion on direct review (replacing "appellant" with "petitioner") as a fair and accurate summary of the evidence presented at trial.  (Lodged Doc. 6 at 2-5).

        **A.**      **Counts 1-4:  May 29, 2009 DUI**

On May 29, 2010, petitioner's 17-year-old daughter, Victoria Ramirez, was killed while petitioner was driving under the influence of alcohol (DUI).  Earlier in the day, petitioner drove Victoria, her four-year-old son (Jose H.), and Victoria's friend (Abilene Diaz) to a party in Nyeland Acres.  Petitioner consumed beer before going to the party, drank a beer on the way to the party, and drank a lot of beer at the party.  Jaquelin Garcia saw petitioner seated at a table with two or three open cans of beer.

When petitioner left the party at 9:00 p.m., Garcia asked if petitioner was okay to drive or needed a ride.  Petitioner said that her daughter (Victoria) or daughter's friend (Diaz) was driving.  Liana Marron, the party host, asked "Are you okay?" "Do you want me to take you?"  Petitioner said that Diaz was driving.  As they walked to petitioner's Nissan Pathfinder, Victoria asked petitioner to let Diaz drive.  Petitioner insisted on driving and was drunk, which concerned Diaz and Victoria.  On a prior occasion, petitioner said that if she was stopped for drunk driving they would throw her in jail.

At 9:08 p.m., petitioner stopped at a Valero gas station on Vineyard Avenue and purchased a large can of beer.  Petitioner drank the beer from a brown paper bag as she drove northbound on Vineyard Avenue to Santa Paula.  Diaz noticed that petitioner was zigzagging and saw a truck coming at them head-on.

A motorist, Maria Sanchez, saw the Nissan swerve three or four times and go over the center line into oncoming traffic.  Sanchez turned on her emergency lights to warn motorists and pulled over.  As petitioner approached a curve in the road, petitioner lost control of the Nissan, hit a ditch culvert, and rolled over two times.  Diaz, who was in the front passenger seat, suffered facial lacerations.

Petitioner's daughter, Victoria, was in the rear passenger seat and died from blunt-force head injuries.

Petitioner's four-year-old son, Jose, was trapped in the rear passenger seat and suffered a broken arm. Jose yelled, "Help me. Help me" and "Sorry, Mom. Sorry, Mom." Petitioner was worried, and in an angry voice, told Jose to "Shut your trap" and "Don't say anything more." After a paramedic arrived, petitioner screamed, "Is my daughter fucking dead? Don't fucking lie to me. Tell me, is she fucking dead?"

California Highway Patrol Officer Richard Holguin responded to the 911 call and found a can of beer in a brown bag 10 to 15 feet from the Nissan. The can was "freshly opened" and had beer in it. Officer Holguin contacted petitioner at the hospital and noted that she had a strong odor of alcohol and red and glassy eyes. Petitioner had minor cuts to her face and left arm, and contusions across the shoulder and chest. Officer Holguin believed the injuries were consistent with petitioner being the driver and asked how the accident happened. Petitioner said "My brakes didn't work. I couldn't stop." When Officer Holguin asked where petitioner started driving from, petitioner replied "I never said I was driving." Officer Holguin responded, "You just told me that your brakes weren't working. That kind of implies to me that you were driving."

Petitioner repeatedly asked about her daughter but not about her son who was crying loudly in the hospital trauma room. Petitioner said that she drove through the curves on Vineyard, that the brakes did not work, and that she tried to drive into a field and crashed. When petitioner was told that her daughter was dead, petitioner yelled out, "No. It's my fault. I should have been the one who had died."

Petitioner admitted drinking earlier in the day but could not recall how much. Officer Holguin noted that petitioner's speech was thick and slurred and administered simple field sobriety tests. Petitioner failed the tests and was asked

to take an alcohol breath test. Petitioner said, "Go ahead. I was drunk anyways." Petitioner blew into a preliminary alcohol screening device which registered a .124 percent blood-alcohol concentration (BAC). When Officer Holguin asked petitioner for a second breath sample, petitioner pursed her lips and pretended to blow.

Petitioner was arrested, waived her rights under Miranda v. Arizona, 384 U.S. 436 (1966), and admitted that she consumed beer before and during the party. Petitioner took a blood test which registered a .16 percent BAC. Based on a hypothetical that petitioner was drinking before the traffic fatality and had not fully absorbed the alcohol, a forensic expert opined that petitioner's BAC was .133 percent to .156 percent.

At trial, Diaz testified that petitioner purchased a beer at a liquor store before the party and drank it as she drove them to the party. Diaz noticed that the Nissan was swerving and that petitioner had difficulty controlling the vehicle.

The day before the occurrence the number one, northbound lane on Vineyard Road was resurfaced. Marc Mumford, the project supervisor, testified that the construction zone was posted 25 miles per hour and that Caltrans wanted the signs to stay up over the weekend. Before the occurrence, Mumford's crew placed yellow and white reflective tabs on the road to mark the center line and northbound traffic lanes. Three foot tall, orange reflective cylinders were placed along the edge of the roadway every 30 feet.

Petitioner defended on the theory that the Nissan brakes did not work, that the steering locked up, and that the road was too dangerous to drive on. These claims were refuted by expert testimony that the Nissan had no mechanical problems, that Vineyard Avenue was safely marked for nighttime driving, and that the road resurfacing did not cause the accident. Wesley Vandiver, an accident reconstruction expert, opined that the Nissan was traveling 60 miles per hour when petitioner drove it off the road.

### B. Counts 5-7: January 27, 2007 DUI

Counts 5 through 7 are based on a 2007 DUI. Shortly after midnight on January 27, 2007, petitioner ran a stop sign with no headlights on and turned left in front of a patrol car driven by Oxnard Police Officer Joseph Clarke. Officer Clarke braked to avoid hitting petitioner and followed for two or three blocks as petitioner made quick jerky movements. Petitioner was driving with a suspended license and said that she had two or three drinks at a nearby bar. Petitioner's speech was slurred and her eyes were red and tired. Officer Clarke asked if petitioner was feeling the effects of alcohol. Petitioner said "I feel good" and that she was on her way to pick up her son. Petitioner admitted that she was "too drunk" to perform a field sobriety test and took a blood test which registered a .18 percent BAC. After petitioner was arrested for DUI, her driver's license was suspended.

### C. 2004 DUI Conviction

In 2004 petitioner was convicted of DUI and ordered to attend an alcohol school program. Before petitioner was expelled from the program, petitioner attended a class on the risks and dangers of driving while intoxicated, a class on the statistics of alcohol related car accidents resulting in injury or death, and a class about DUI victims and their families. It was stipulated that petitioner's driver's license was suspended as a result of the 2004 DUI conviction and that petitioner drove with a suspended license from December 4, 2004 through May 29, 2010 when the traffic fatality occurred.

## IV. STANDARD OF REVIEW

This Court may entertain a petition for writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant an application for writ of habeas corpus on behalf of a person in state custody with respect to any

claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[3]

In applying the foregoing standards, federal courts look to the last reasoned state court decision. See Smith v. Hedgpeth, 706 F.3d 1099, 1102 (9th Cir.), cert. denied, 133 S. Ct. 1831 (2013). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (cited with approval in Johnson v. Williams, 133 S. Ct. 1088, 1094 n.1 (2013)); Cannedy v. Adams, 706 F.3d 1148, 1158 (9th Cir. 2013) (it remains Ninth Circuit practice to "look through" summary denials of discretionary review to the last reasoned state-court decision), as amended on denial of rehearing, 733 F.3d 794 (9th Cir. 2013), cert. denied, 134 S. Ct. 1001 (2014).

## V.   DISCUSSION[4]

Petitioner contends that the evidence presented at trial did not support her second degree murder conviction because there was insufficient evidence to prove implied malice. The California Court of Appeal – the last state court to issue a

---

[3]When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary. Harrington v. Richter, 562 U.S. 86, 99 (2011); see also Johnson v. Williams, 133 S. Ct. 1088, 1094-96 (2013) (extending Richter presumption to situations in which state court opinion addresses some, but not all of defendant's claims).

[4]The Court has read, considered and rejected on the merits all of petitioner's contentions. The Court discusses petitioner's principal contentions herein.

7

reasoned decision addressing this claim – rejected the claim on its merits on direct review. (Lodged Doc. 6 at 5-9). Based on an independent review of the record (see Jones v. Wood, 114 F.3d at 1008), this Court concludes that the Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, petitioner is not entitled to federal habeas relief on this claim.

      A.      **Pertinent Law**

On habeas review, a court's inquiry into the sufficiency of the evidence is subject to two layers of judicial deference. Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012) (per curiam). First, on direct appeal, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." Id. (quoting Cavazos v. Smith, 132 S. Ct. 2, 4 (2011) (per curiam)); see Jackson v. Virginia, 443 U.S. 307, 319 (1979) (standard of review on sufficiency of the evidence claim is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt") (emphasis in original); Coleman, 132 S. Ct. at 2065 ("[T]he only question under Jackson is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality.").

Second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" Coleman, 132 S. Ct. at 2062, 2065 (state court determination that jury's finding was not so insupportable as to fall below the threshold of bare rationality is entitled to

considerable deference on habeas review) (citations omitted); see Juan H. v. Allen, 408 F.3d 1262, 1274-75 (9th Cir. 2005) (as amended) (federal habeas relief may be afforded on sufficiency of the evidence claim only if state court's adjudication of the claim involved unreasonable application of Jackson to the facts of the case), cert. denied, 546 U.S. 1137 (2006).[5]  Sufficiency of the evidence claims are judged by the elements defined by state law.  Jackson, 443 U.S. at 324 n.16.  Evidence must be considered in the light most favorable to the prosecution.  Id. at 319. Circumstantial evidence and the inferences drawn therefrom may be sufficient to sustain a conviction.  Ngo v. Giurbino, 651 F.3d 1112, 1114-15 (9th Cir. 2011).

        Under California law, second degree murder is defined as "the unlawful killing of a human being with malice aforethought" but without additional elements that would support a conviction of first degree murder.  People v. Knoller, 41 Cal. 4th 139, 151 (2007).  Malice aforethought may be express or implied.  People v. Beltran, 56 Cal. 4th 935, 942 (2014) (citation omitted).  Malice is implied when an unlawful killing results from a willful act, the natural and probable consequences of which are dangerous to human life, performed with conscious disregard for that danger.  People v. Elmore, 59 Cal. 4th 121, 133 (2014) (citations omitted).  Malice may be found even when the act causes an accidental death.  People v. Contreras, 26 Cal. App. 4th 944, 954 (1994) (citation omitted), habeas corpus denied, 5 F. Supp. 2d 854 (C.D. Cal. 1998).  A person who, knowing the hazards of drunk driving, drives a vehicle while intoxicated and proximately causes the death of another may be convicted of second degree murder under an implied malice theory.  People v. Batchelor, 229 Cal. App. 4th 1102, 1112 (2014); see People v. Watson, 30 Cal. 3d 290, 300-01 (1981) ("'One who wilfully consumes alcoholic beverages to the point of intoxication, knowing

---

[5]The California standard for determining the sufficiency of evidence to support a conviction is identical to the federal standard enunciated in Jackson.  People v. Johnson, 26 Cal. 3d 557, 576 (1980).

1 that he thereafter must operate a motor vehicle, thereby combining sharply
2 impaired physical and mental faculties with a vehicle capable of great force and
3 speed, reasonably may be held to exhibit a conscious disregard of the safety of
4 others.'" (citation omitted)). The defendant must have actually appreciated the
5 risk involved, as a subjective matter. Watson, 30 Cal. 3d at 296-97; Batchelor,
6 229 Cal. App. 4th at 1112-13 (citation omitted).

   B.  Analysis

  This is not a close case. It was more than objectively reasonable for the Court of Appeal to conclude that the evidence presented at petitioner's trial was sufficient to support a finding of implied malice because such evidence established, among other things, that petitioner's blood alcohol content well exceeded the legal limit, she had a pre-drinking intent to drive, she knew the hazards of driving while intoxicated, and she engaged in highly dangerous driving. (Lodged Doc. 6 at 6-8). As the Court of Appeal explained:

> [Petitioner] had a .13 to .15 BAC, almost twice the legal limit, when she drove off the road and killed her daughter. [Petitioner] knew she was too intoxicated to drive and knew it would be highly dangerous. The state of mind of a person who acts with conscious disregard for life "is, 'I know my conduct is dangerous to others, but I don't care if someone is hurt or killed.'" [Citation].
>
> Diaz testified that [petitioner] consumed beer before the party and drank a lot before leaving the party. Two people asked if [petitioner] was okay to drive and needed a ride. [Petitioner] lied and said that Diaz was driving. Concerned about [petitioner's] drinking, Victoria asked if Diaz could drive. [Petitioner] insisted on driving, stopped at a Valero gas station, and bought a large can of beer. Knowing it was wrong to drink and drive, [petitioner] drank from a

///

paper bag as she zigzagged down Vineyard Road well in excess of the posted speed limit.

Drinking an open can of beer while speeding through a road construction project at night is not a trivial or casual undertaking. It was strong circumstantial evidence of [petitioner's] conscious indifference and "I don't care attitude." [Citation]. Petitioner's wanton conduct was similar to the 2007 DUI in which she almost hit a police car and tried to drive away. [Petitioner] told the officer that she had two or three drinks and was on her way to pick up her son.

A reasonable jury could find that [petitioner] knew about the hazards of drinking and driving based on the prior DUI conviction and the alcohol school classes. [Petitioner] had her driver's license suspended in 2004 and failed to complete the DUI alcohol school program. It was a daily reminder that [petitioner] should not drive while intoxicated yet [petitioner] continued to drive and had a second DUI in 2007. Courts have consistently looked to the driving records of the defendant and educational programs attended in determining implied malice. [Citations]. "One who drives a vehicle while under the influence after having been convicted of that offense knows better than most that h[er] conduct is not only illegal, but entails a substantial risk of harm to [herself] and others." [Citation].

The evidence further shows that [petitioner] had a preconceived plan to drink and drive and knew that it would endanger the lives of others. [Petitioner] drank before going to the party, drank on the drive over to Nyeland Acres, and consumed more alcohol at the party. The party host and a friend asked whether [petitioner] was okay to drive or needed a ride home. [Petitioner] lied about who was driving and vetoed her daughter's request to let Diaz drive. Minutes

>   later, [petitioner] bought another beer and drank it as she zigzagged
>   through the road project and almost hit a truck head on.
>
>   After [petitioner] hit the ditch culvert and rolled the Nissan,
>   [petitioner] exhibited a callous disregard for the safety of her
>   passengers. Suspecting that her daughter was dead or seriously
>   injured, [petitioner] yelled at her four-year-old son to "Shut your trap"
>   and not say anything. When [petitioner] became the focus of the
>   police investigation, [petitioner] denied that she was driving and
>   blamed the accident on the car brakes and steering.

(Lodged Doc. 6 at 6-8) (citations omitted). This Court agrees with the Court of Appeal's findings and analysis. Petitioner's suggestion that the evidence does not support an inference that she was subjectively aware that she was engaging in conduct that was dangerous to human life and deliberately acted with conscious disregard for life was properly rejected by the Court of Appeal:

>   Actions speak louder than words. [Petitioner] continued to
>   drink and drive after her license was suspended in 2004 and 2007. . . .
>   [This] was strong circumstantial evidence that [petitioner] intended to
>   drink and drive no matter how much it endangered the lives of
>   others."
>
>   * * *
>
>   [Petitioner] knew she was too intoxicated to drive, lied about
>   who was driving, and drank a beer from a paper bag as she sped
>   through a road resurfacing project. Narrowly avoiding a head-on
>   collision with a truck, [petitioner] rolled the Nissan and fatally injured
>   her daughter. Before the police arrived, [petitioner] told her four-
>   year-old-son who was trapped in the back seat to "Shut up" and
>   "Don't say anything." It took no leap of logic for the jury to conclude
>   that [petitioner] acted with conscious disregard of life and with

wanton disregard of the near certainty that someone would be killed.
[Citation].

(Lodged Doc. 6 at 8-9) (citations omitted).  This Court again agrees.

Although petitioner appears to claim that she is entitled to relief because the evidence supports an inference that she was not acting with implied malice and did not actually appreciate the hazards involved, she misapprehends the standards governing the assessment of this claim.  Even if the jury could have reasonably drawn an inference that petitioner did not act with implied malice, this Court must consider the evidence in the light most favorable to the prosecution and draw all reasonable inferences in its favor.  See United States v. Nevils, 598 F.3d 1158, 1164 (9th Cir. 2010) (en banc) (citation omitted).

In sum, the Court of Appeal's rejection of petitioner's challenge to the sufficiency of the evidence of implied malice was not contrary to, or an unreasonable application of, Jackson or other clearly established federal law.  Nor did it constitute an unreasonable determination of the facts in light of the evidence presented.  Indeed, the evidence overwhelmingly established that petitioner subjectively knew she was engaging in conduct that was dangerous to human life but deliberately acted with conscious disregard for life with a tragic result. Petitioner is not entitled to federal habeas relief.

## VI.   CONCLUSION

IT IS THEREFORE ORDERED that:  (1) the Petition is denied and this action is dismissed with prejudice; and (2) the Clerk shall enter judgment accordingly.

IT IS SO ORDERED.

DATED: June 22, 2015

                                           /s/
                              Honorable Jacqueline Chooljian
                              UNITED STATES MAGISTRATE JUDGE